IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIRGINIA D. PEEPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-cv-658-TLW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Virginia D. Peeper seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416 (i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1] [Dkt. # 9].

**Introduction**

In social security cases, plaintiff bears the burden of establishing a prima facie case of disability at steps one through four of the five step evaluation.[2] Nielson v. Sullivan, 992 F.2d 1118,

---

[1] Plaintiff's applications for disability insurance benefits and SSI were denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") John Volz was held on June 27, 2008. [R. 13]. By decision dated June 27, 2008, the ALJ entered the findings that are the subject of this appeal. [R. 5]. The Appeals Council denied plaintiff's request for review on September 6, 2006. [R.49]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished),

1120 (10th Cir. 1993).  "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of the impairment during the time of her alleged disability.  20 C.F.R. §§ 404.1512(b), 416.912(b).  A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C § 423 (d)(3).  "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms."  20 C.F.R. §§ 404.1508, 416.908.  The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians.  20 C.F.R. §§ 404.1513(a), 416.913(a).

## Background

Plaintiff is a 47 year old Native American female, born on December 27, 1961.  [R. 75, 92]. She has an eighth grade education.  [R. 98].  Plaintiff has been married to Leroy Peeper for 15 years.[3] [R. 147, 354].  They have one son, Blake who is 10 years old.  Plaintiff has a second son Richard who is 20 years old.  [R. 21, 346].  Plaintiff's family is dysfunctional.  [R. 346].  She has been estranged from her husband since 2000.  [R. 21].  Plaintiff's husband left her when she quit her

---

citing Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).

[3] There is some confusion in the record as to the name of plaintiff's spouse.  In her applications for Disability Insurance Benefits and Supplemental Security Income, plaintiff stated that she was married to Herman Peeper.  [R. 75, 78].

working full time in 2000. [R. 21, 84]. Although unhappy, plaintiff remained married for financial support. [R. 341]. Plaintiff's son Richard, his wife Holly, and their six month old daughter Misty have resided with plaintiff since December 2007. [R. 23, 344, 346]. Richard and Holly do not get along and they do little work around the house to help plaintiff. [R. 346]. Plaintiff was employed during the following years: 1978-1979, 1983, 1986-1988, and 1992 to 2004. [R. 83-87]. Her recent employment includes janitorial work for Shiew Janitor Service from 1993-1994; warehouse worker for Solaray Corp. from 1994 to 2001, and part-time work as a presser for EGS Launder and Pressing from 2001 to 2002, and for Carolyn Inn in 2004. [R. 84, 100, 117].

Plaintiff claims January 1, 2003, as the onset date of her disability. [R. 93]. She contends an inability to work because she "can't raise, lift, and move" her right arm without severe pain. [R. 93]. She claims physical impairments due to fibromyalgia, allegedly causing chronic pain throughout her body, and mental impairment due to anxiety and depression. [R. 18, 24].

In assessing plaintiff's qualification for disability benefits, the ALJ found that plaintiff has not engaged in any substantial gainful activity since January 1, 2003; she met the insured status requirements through December 31, 2007; her severe impairments are degenerative disc disease, chronic pain and depression. [R. 7]. The ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments; and she has the residual functional capacity (RFC) to perform light exertion work, as defined in 20 CFR §§ 404.1567(b) and 416.976(b).[4] However, her RFC assessment excluded any overhead reaching or

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a person must have the ability to do substantially all of these activities. If a person can do light work,

lifting of objects over 10 pounds. At step four, the ALJ found plaintiff incapable of performing her past relevant work as janitor (semi-skilled work at a medium exertion level) and as a warehouse worker (unskilled work at a medium exertion level) because these jobs require a capacity to lift and or carry 50 pounds occasionally. [R.10]. At step five, the ALJ considered plaintiff's young age, limited education, work experience, RFC, and the Medical-Vocational Guidelines ("Grid") and found that plaintiff could perform light work limited by the two restrictions addressed above. The ALJ consulted a vocational expert to determine the extent plaintiff's limitations impeded her ability to perform work in the national economy. The vocational expert listed three unskilled, light exertion jobs that plaintiff could perform: packing, food production and cashier. [R. 11]. Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the SSA. [R. 22]. This finding was at step five of the sequential inquiry outlined in Williams v. Bowen. See supra n.2 at 1.

## Issues

Plaintiff raises three issues on appeal:

(1) Whether the ALJ failed to discuss and analyze all relevant medical evidence of record.

(2) Whether the ALJ failed to consider all the medical evidence in determining plaintiff's RFC.

(3) Whether the ALJ failed to perform a proper credibility determination.

[Dkt. # 16 at 4-13].

## Discussion

The Court's role in reviewing the decision of the Commissioner under 42 U.S.C.§ 405(g) is

---

he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. Id.

limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996); and Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). The Court is to consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," but the Court will not reweigh the evidence or substitute its judgment for that of the ALJ. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

As her first assignment of error, plaintiff contends the ALJ failed to consider all relevant medical evidence in assessing plaintiff's disability claims. Plaintiff argues the ALJ relied primarily on the opinion of the consultative examination Adel Malati, M.D. to the exclusion of medical evidence diagnosing plaintiff with fibromyalgia, carpal tunnel syndrome and ganglion cysts. The Court disagrees.

In determining plaintiff's severe impairments, the ALJ relied on medical evidence and the regulations. He found that plaintiff's degenerative disc disease was a severe impairment based on an MRI taken on February 16, 2006 ,which showed a disc protrusion at C6-7. [R. 7]. However, he also found that this severe impairment was not disabling because it did not cause "compression or displacement of the neural elements, spinal stenosis, or foraminal narrowing." Thus, it did not meet or medically equal the requirements of the Listing of Impairments, under section 1.04 for disorders

of the spine. [R. 7-8]. As to the listing requirements for spinal disorders, the ALJ found:

> [T]here is no evidence of herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, degenerative disc disease, facet arthritis, or vertebra; fracture resulting in compromise of a native root or the spinal cord.

[R. 8]. The ALJ also found that plaintiff's depression was a severe impairment based on opinion evidence and a medical diagnosis of dysthymia.[5] [R. 7]. However, the ALJ found this condition was also not disabling because it failed to meet or medically equal the criteria of listing 12.04, pertaining to affective disorders. [R. 8]. The ALJ found that her mental impairment did not result in at least two "marked" restrictions in daily living, social functioning, or difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. [R. 8]. The ALJ found:

> In activities of daily living, the claimant has <u>mild</u> restriction. The claimant has reported that she is able to care for her daily grooming and that people come over to visit (Exhibit 9E).
>
> In social functioning, the claimant has <u>mild</u> difficulties. The claimant reported in a function report that she is able to shop for groceries and that people come over to visit (Exhibit 9E).
>
> With regard to concentration, persistence or pace, the claimant has <u>moderate</u> difficulties. The claimant reported that she keeps a calendar to keep tract of her medication and bathing, etc. However, she noted that she is able to pay bills, count change, and handle a checking and savings account. She also added that she is able to read and watch TV (Exhibit 9E).

---

[5] Dysthymia is defined as a type of depression involving long-term, chronic symptoms that are not disabling, but keep a person from functioning at "full steam" or from feeling good. Dysthymia is a less severe type of depression than what is accorded the diagnosis of major depression. However, people with dysthymia may also sometimes experience major depressive episodes, suggesting that there is a continuum between dysthymia and major depression. <u>See</u> www.medterms.com.

> As for episodes of decompensation, the claimant has experienced no episodes of decompensation.

[R. 8] (emphasis added).  Even though the ALJ found that plaintiff's chronic pain was severe, he also relied on plaintiff's own testimony in finding that her chronic bodily pain was not disabling.  He found:

> In terms of disabling pain and fatigue, she reported in a functional report that she is able to do laundry, some food preparation, shopping, and dusting with her left hand (Exhibit 4E).  The claimant testified at the hearing that she weeds her flower beds.

[R. 10].  From a review of the entire record, the Court finds the ALJ's determination is supported by substantial evidence.

In considering plaintiff's claim of disabling pain from fibromyalgia, carpal tunnel syndrome and ganglion cysts, the ALJ relied on the physical RFC assessment performed by Adel Malati, M.D. in determining these conditions were not physically limiting.  The ALJ stated:

> As for opinion evidence, Adel Malati, M.D., performed a consultative examination in August 2006.  The doctor noted the claimant had unexplained pain in her shoulders, which could be osteoarthritis or fibromyalgia.  Dr. Malati added that the claimant was observed returning to her car after the evaluation.  She had no difficulty walking, used no assistive device, and had a safe, steady gait.  The claimant was able to sit, stand, and lie without difficulty.  She had full range of motion in her neck, shoulders, elbows, wrists, and hands.  Her hand grip was 5/5 and equal bilaterally.  She was able to heel walk, toe walk, and heel-to-toe walk without difficulty.  On examination, the claimant had some crackles in moving of her shoulders (Exhibit 2F).

[R. 10].  Thus, the Court finds that the ALJ considered all relevant medical evidence and that his determination was supported by substantial evidence.

Plaintiff complains that the ALJ erred in failing to discuss treatment notes from Okemah Creek Nation Community Hospital, from 2004 to 2007, concerning plaintiff complaints of pain and a diagnose of carpal tunnel syndrome, ganglion cyst removal and fibromyalgia [R. 172-203];  and

from Creek County Nation Indian Behavioral Health Center in 2007, concerning plaintiff's purported sleep disorder due to fibromyalgia. [R. 352-3]. See Dkt. # 16 at 6. The Court disagrees. Plaintiff fails to identify any medical evidence that contradicts the ALJ's finding that these conditions are not disabling. To the contrary, a physician's examination note dated January 3, 2006, is consistent with the ALJ's assessment by his notation that plaintiff should be "careful lifting > 15 lbs." [R. 172]. The examination notes that plaintiff cites are primarily recordings of plaintiff's subjective complaints of pain, without any substantiating objective medical evidence. In fact, the only corroborating evidence is the cervical spine MRI showing plaintiff's disc protrusion at C6-7. This objective evidence was recognized by the ALJ. [R. 7]. On this same report, Robert Skib, M.D. observed:

> No focal disc protusion, canal stenosis, or foraminal narrowing are identified. Specifically, no abnormality is identified which would explain a right upper extremity radiculopathy.

[R. 316]. This observation undermines plaintiff's claim that she met her burden that her physical impairments are disabling, or that they are founded on objective medical evidence and laboratory findings. On February 4, 2008, plaintiff admitted to her mental health provided that her "MRI showed nothing." [R. 344].

As her second assignment of error, plaintiff contends the ALJ did not properly account for all of her limitations when formulating her RFC, and therefore, did not properly determine her RFC. Again plaintiff claims the ALJ failed to impose any limitation based on her fibromyalgia and carpal tunnel syndromes. The Court disagrees. As previously stated, the ALJ made an accommodation for plaintiff's fibromyalgia and carpal tunnel syndromes (that she could not raise, lift, and move her right arm without severe pain) by excluding from her RFC assessment "any overhead reaching or lifting of objects over 10 pounds." [R. 9]. The ALJ also stated that his RFC assessment was supported by

the "objective medical evidence of record" [R. 10] which this Court acknowledges impeaches plaintiff's subjective complaints of pain. Accordingly, the ALJ's RFC assessment is supported by substantial evidence.

Plaintiff also faults the ALJ for failing to include all her impairments in his hypothetical question to the vocational expert. Again, there is no merit to this argument. The ALJ incorporated the same restriction in his hypothetical to the vocational expert as he imposed in his RFC. The ALJ propounded the following hypothetical at the hearing:

> Okay. I'm going to give you a hypothetical claimant of this claimant's age and educational background, prior work experience who could do the following, she could work with the following limitations, occasionally [lift/carry] 20 pounds, frequently ten pounds; six hours stand or walk; six hours sitting; no overhead reaching, normal reaching out from the body, but no overhead reaching; no overhead reaching of heavy objects or objects over ten pounds.

[R. 28]. Thus there is no merit in plaintiff's claim that the ALJ's hypothetical question failed to take into consideration the limitations borne out of the evidentiary record.

As her last argument, plaintiff repeats her claim that the ALJ erred in failing to properly analyze all the medical evidence, and that his failure to do so "corrupted" his credibility assessment. Plaintiff contends the ALJ failed to provide sufficient details to support his credibility determination, and that his assessment was merely his conclusory opinion. [Dkt. # 16 at 10]. The Court finds no merit in this argument. The record shows the ALJ conducted a proper credibility determination. First, the ALJ provided a summary of plaintiff's testimony:

> At the hearing, the claimant testified that: she last worked full time at a laundry in 2000, but tried to return to work part-time. She stopped working, because she could not stand any more. She has trouble moving her right arm and difficulty writing. The claimant reported that she is constantly in pain and tired all the time. She takes medication for depression and anxiety, which makes her dizzy. Her 10-year-old son does a lot of things for her.

[R. 9]. Then, the ALJ entered his credibility determination.

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons started below.

[R. 9-10]. The ALJ noted the event which prompted plaintiff to file for disability and supplemental income. "The claimant reported that she did not file for disability benefits until she and her husband separated." [R. 10]. Plaintiff's apparent desire to seek an alternative means of support impeaches her testimony that disabling pain prompted her application for social security benefits. As detailed above, the ALJ recited evidence to illustrate that regardless of her impairments she retained the functional ability to perform light work with defined limitations. Plaintiff fails to identify any objective evidence to substantiate her subjective complaints of pain. The ALJ correctly found that plaintiff's impairments have not been shown to prevent her from performing light work. The ALJ concluded that considering her young age of 47 years old, limited education, ability to communicate in English, work experience, and RFC, she could perform light work. He concluded that plaintiff had the functional capacity to work, regardless of her degenerative disc disease, chronic pain and depression. Because the plaintiff is not challenging the accuracy of the medical records relied on by the ALJ, the Court finds the ALJ provided substantial evidence to support his findings on the issue of plaintiff's credibility. Further, from a *de novo* review of the entire record the ALJ's credibility determination is clearly supported by substantial evidence, including plaintiff's own testimony that she is able to do laundry, some food preparation, shopping, dusting with her left hand and work in her garden. The ALJ properly relied on these daily living activities, and other evidence, in assessing

her credibility. [R. 10]. Plaintiff's attempt to have this Court minimize these activities is nothing more than an improper weighing of the evidence, rather than an assessment of its overall sufficiency. Credibility determinations are peculiarly the province of the finder of fact, and the Court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished). Such a link exists here.

## **Conclusion**

The Court finds that there is substantial evidence in the record to support the ALJ's decision. The Court further finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 31st day of March, 2010.

_____
T. Lane Wilson
United States Magistrate Judge